[No. 41732-1-I.    Division One.    December 14, 1998.]

THE CITY OF SEATTLE, *Respondent*, v. BERNARD MEGREY, *Petitioner.*

*Michael Danko*, for petitioner.

*Mark H. Sidran, City Attorney*, and *Moses F. Garcia, Assistant*, for respondent.

APPELWICK, J. — A person restrained by an antiharassment order may not send a demand letter, not required in the cause of litigation, to the person protected by the antiharassment order. The content of a letter sent in violation of an antiharassment order need not contain harassing information. Knowledge that the letter is sent in violation of the order is enough to sustain a conviction for contempt. The trial court is affirmed.

## FACTS

When their two-year relationship ended, Sandra Lyons

sought and obtained an antiharassment order against Bernard Megrey. The order prohibited Megrey from, among other things, contacting Lyons by mail. Two months later, on December 1, 1995, Megrey filed a Notice of Claim against Lyons in small claims court, seeking repayment of a loan.

The courts provide an instructional brochure to small claims litigants. The brochure includes this paragraph:

> **Settlement**. It is recommended that either the plaintiff or the defendant contact the other party prior to the trial to try to settle your differences. If your claim is settled before the trial, please notify the court in writing so the case may be dismissed.

On February 7, 1996, Megrey sent Lyons a settlement demand letter. When Lyons did not respond, Megrey served the Notice of Claim on Lyons on March 7, 1996. On April 1, 1996, the City of Seattle filed a criminal complaint against Megrey, charging him with violation of the antiharassment order. On the basis of Megrey's having sent the demand letter,[1] the court found Megrey guilty. The court found that while Megrey acted in compliance with the suggestion contained in the small claims court brochure, Megrey also knew that the antiharassment order prohibited him from contacting Lyons; he contacted her anyway. In the meantime, the district court held a hearing on Megrey's small claims action and dismissed it with prejudice for failure to meet the burden of proof.

The parties do not dispute the findings of fact. Megrey challenges the conclusions of law.

## ANALYSIS

■■ On appeal, a trial court's conclusions of law are reviewed de novo (*State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 502 U.S. 1111 (1992)) but the Court of Appeals accords a trial court's conclusions

---

[1]The city does not allege that the filing of the complaint nor service of the complaint violated the restraining order.

of law great significance. *State v. Collins*, 121 Wn.2d 168, 174, 847 P.2d 919 (1993). A trial court's findings of fact will not be disturbed if supported by substantial evidence. *State v. Mewes*, 84 Wn. App. 620, 622, 929 P.2d 505 (1997).

Constitutional Right of Access to the Courts

■ ■ Megrey argues that he has a right to pursue lawful claims against any party, including a party who has obtained an antiharassment order, and that sending the settlement letter was therefore a constitutionally protected action in pursuit of his lawful claim. Due process requires that litigants be given a meaningful opportunity to be heard. *In re Marriage of Giordano*, 57 Wn. App. 74, 77, 787 P.2d 51 (1990); *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S. Ct. 780, 785, 28 L. Ed. 2d 113 (1971). However, the courts have established limitations on that right of access:

> [W]hen access to the court is not essential to advance a fundamental right, such as the freedom of association or disassociation involved in *Boddie*, access may be regulated if the regulation rationally serves a legitimate end. . . .
>
> In other words, "[t]here is no absolute and unlimited constitutional right of access to courts. All that is required is a reasonable right of access—a reasonable opportunity to be heard."

*Giordano*, 57 Wn. App. at 77, citing *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 554 (3d Cir. 1985).

Megrey cites *Housing Auth. v. Saylors*, 87 Wn.2d 732, 742, 557 P.2d 321 (1976) in support of his argument. In *Housing Authority*, a tenant sought an order of indigency requiring expenditure of public funds to pay the costs of prosecuting the tenant's appeal of an unlawful detainer action. Affirming the trial court's order denying the expenditure of public funds, the Supreme Court noted that an indigent's right to appeal at the expense of the state depends in part on whether a fundamental interest is at stake. Waiver of fees is not required if the indigent's claim does not involve a fundamental interest and there is another procedure available for redress of the indigent's

claim. "If the litigation is in the field of economics and social welfare, and there is no suspect classification, the applicable standard for determining the propriety of imposing fees is rational justification." *Housing Auth.*, 87 Wn.2d at 739, citing *Ortwein v. Schwab*, 410 U.S. 656, 93 S. Ct. 1172, 35 L. Ed. 2d 572 (1973). Where no fundamental interest is involved, the court balances the parties' interest in the specific relief sought with the interests of the court and other parties. *See Olsen v. Delmore*, 48 Wn.2d 545, 295 P.2d 324 (1956) (trial court did not abuse its discretion in refusing to waive sheriff's fees, finding that appellant's interest in obtaining execution of judgment was outweighed by sheriff's statutory right to indemnification); *Ashley v. Superior Court*, 83 Wn.2d 630, 521 P.2d 711 (1974) (court may not waive an absent defendant's right to notice where petitioner is indigent, but court has authority to fashion means of notice which do not incur expense of publication); *Bullock v. Superior Court*, 84 Wn.2d 101, 524 P.2d 385 (1974) (court may not order waiver of sheriff's fees but must devise alternative means of service).

The Small Claims Information brochure recommends that either party contact the other prior to trial to try to settle the case, this is **not** a required step. The brochure makes clear distinctions between what a plaintiff **must** do and what a plaintiff **may** do in a small claims case. For example:

- "To start a case in the small claims court, you (plaintiff) **must** either file the case . . ."

- "At the time of filing you **must** pay a fee of $10.00."

- "If no appeal is taken and the judgement is not paid within 20 days . . . you **may** request (in writing) that the judgment be entered . . . ."

We are presented with two legitimate interests: the interest of one party in being free from contact with the other pursuant to an antiharassment or other similar order, and the interest of the other person in pursuing a legal claim.

Where these interests conflict, the proper solution is to seek permission from the court which issued the antiharassment order to modify the order to allow the appropriate action. Such a process has the advantage of returning the parties to the court, which is in the best position to examine the totality of the circumstances and balance the competing interests of the parties: i.e., the nature and extent of likely contact, the risk to the protected party, the nature of the claim, whether a statute of limitations is about to toll and other exigencies. This hearing would create a record and an appealable order, which would preserve the parties' rights until the issues in the legal claim had been fully litigated, without exposure to contempt as experienced by Megrey.

In certain fact situations the court could find the risk to the protected party was great and the urgency for the restrained party to proceed minimal. The litigation could be deferred. On other facts the urgency to proceed may outweigh the risk to the protected party.

In this case, Megrey is not charged with contempt based on filing and service of process or contact during litigation. Megrey was charged with contempt for sending a demand letter directly to Lyons. Sending the demand letter was a discretionary act, not necessary to pursuing the small claim.

In enacting RCW 10.14, the Legislature found that the prevention of coercive or intimidating harassment is an important governmental objective. Lyons obtained an antiharassment order prohibiting Megrey from contacting her. Megrey could have sought court permission to take the action he took, but he chose not to. Megrey had reasonable access to the courts without sending the settlement letter. In balancing RCW 10.14 and Lyons' interest in being free of contact with Megrey's interest in pursuing litigation in a manner which violates the antiharassment order, the court could reasonably find Megrey in contempt. We affirm the trial court's decision.

"Willful" Violation and Bad Purpose

Megrey argues that willfulness, in the context of antiharassment, requires proof of specific intent and that his contacting Lyons constitutes a violation of the antiharassment order only if he intended to harass her. He cites no authority for this assertion. He argues, however, that RCW 10.14.020(1) defines "unlawful harassment" as "a knowing and willful course of conduct . . . ." and that this same scienter element of both "knowing" and "willful" must apply to the city's ordinance defining violation of a civil antiharassment order.

This construction ignores both the Seattle Municipal Code and the distinction between activity which constitutes unlawful harassment and activity which constitutes violation of a court order.

The Seattle Municipal Code provides that anyone who willfully disobeys a civil antiharassment order is guilty of a crime. SMC 12A.06.190. "A requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense . . . ." SMC 12A.04.030. Megrey admits that he knew the antiharassment order prohibited him from contacting Lyons. This satisfies SMC 12A.06.190's scienter requirement.

Megrey's proposed construction of the statute and ordinance requires a court to find the elements of harassment in the conduct it finds is violation of an order of antiharassment. To obtain an antiharassment order under RCW 10.14, a petitioner must prove a respondent engaged in a "knowing and willful" course of conduct. RCW 10.14 requires the court to engage in a subjective analysis and find this purposive element in a person's activities in order to proscribe otherwise legal activities. But once a court has entered an antiharassment order, both state statute and city ordinance (Megrey was prosecuted pursuant to the city ordinance) provide that an antiharassment order is violated by "willful" conduct alone. RCW 10.14.120; SMC 12A.06.190. Neither equity nor principles of statutory construction require investigation into the respondent's

subjective intent when determining whether he has violated the antiharassment order.

We affirm the trial court's decision.

AGID, A.C.J., and COLEMAN, J., concur.